UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**RICHARD A DASEN, SR**,<br><br>Debtor. | Case No. **06-60947-7** |
| **RICHARD J. SAMSON** and **T.E.F.**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**RICHARD A DASEN, SR**, **SUSAN DASEN**, **ANNA DASEN**, **DANA HASHLEY**, **SISSY HASHLEYS**, **DASEN COMPANY**, **BUDGET FINANCE**, **DENNIS GREEN**, **CHUCK VERNON**, **DAVE TONJUM**, **NATE TONJUM**, **DAVE WAATTI**, **MATT WAATTI**, **FLATHEAD TITLE COMPANY**, **PEAK DEVELOPMENT LLP**, **FOLCO DEVELOPMENT CORPORATION**, **WINTERSPORTS, INC.**, and **DOES 1-25**,<br><br>Defendants. | Adv No. **07-00022** |

1

# MEMORANDUM OF DECISION

At Butte in said District this 28th day of September, 2007.

This adversary proceeding was removed to this Court by Notice of Removal filed on March 29, 2007, by Defendants Peak Development, LLP, Dave Tonjum, Nate Tonjum, Dave Waati and Matt Waati (together the "Peak Group"). Plaintiff T.E.F. filed on May 4, 2007, a motion to remand (Docket No. 15) and to allow the state district court to decide a pending motion for partial summary judgment that had been filed by T.E.F. in state court, Cause No. DV-06-065B in the Montana Eleventh Judicial District Court, Flathead County, to set aside transfers by the Debtor/Defendant Richard A. Dasen, Sr. ("Dasen") of his 85% interest in Dasen Company corporate stock as a fraudulent transfer under Montana's Uniform Fraudulent Transfer Act ("UFTA"), MONT. CODE ANN. ("MCA") § 31-2-327, *et seq*. After a hearing the motion for remand was denied by Order entered on June 7, 2007.

The pending motion for partial summary judgment was filed in this adversary proceeding on June 18, 2007, as Docket No. 48, with 35 exhibits attached and a memorandum in support. The Trustee in the above-captioned Chapter 7 case, Richard J. Samson, filed a motion for substitution as real party in interest on June 18, 2007 (Docket No. 49), and objections thereto were resolved by stipulation. The Court set a trial date and other deadlines by Order entered on June 26, 2007 (Docket No. 53), which also allowed parties time to file responses to T.E.F.'s motion for partial summary judgment.

A brief in opposition to T.E.F.'s motion was filed on July 9, 2007, by Defendant Budget Finance (Docket No. 65), accompanied by a seventeen-page affidavit of Dennis Green, with

attached exhibits (Docket No. 66). Budget Finance's brief argues that genuine issues of fact remain as to whether reasonably equivalent value was received, whether Debtor was fulfilling his fiduciary duties as a corporate officer and director, and whether the stock was worthless or had a negative value, or was in satisfaction of Debtor's obligation to support his spouse. T.E.F. filed a reply brief (Docket No. 67) on July 18, 2007. The Trustee filed a reply brief on July 20, 2007, in support of T.E.F.'s motion for partial summary judgment. The Court has reviewed the motion and objections, and supporting exhibits, and applicable law. The pending motion is ready for decision.

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b). T.E.F.'s complaint to determine, avoid and recover fraudulent conveyances is a core proceeding under 28 U.S.C. § 157(b)(2)(H). At issue is whether T.E.F. satisfied its burden under FED. R. BANKR. P. 7056 (applying FED. R. CIV. P. 56(c) in adversary proceedings) of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. After carefully considering all the alleged facts, motion, response and supporting documents in this case, the Court concludes that T.E.F. failed to satisfy its burden under Rule 56 to show an absence of genuine issues of material fact. T.E.F.'s motion for partial summary judgment under Montana's UFTA will therefore be denied. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

### *FACTS*

The following facts were listed in T.E.F.'s memorandum in support of motion for partial summary judgment:

    1.    In February of 2004, Richard Dasen was arrested on sex crimes

charges. After seeing coverage of his arrest on the news, Plaintiff reported that she and her then 15-year-old best friend had been victims of a sexual assault by Richard Dasen the previous summer, when Plaintiff herself was just 16 years old. In May of 2004, Plaintiff initiated a civil action against Dasen. Exh. 14, Complaint, *T.E.F. v. Dasen*, Cause No. CV 05-70-M-LBE (May 16, 2004); *see also*, Exh. 27, Findings and Conclusions 2 (Mar. 10, 2006).

2.  In December of 2005, a jury found Dasen liable for assault and battery and awarded Plaintiff $200,000 in compensatory damages and $2,000,000 in punitive damages. Exh. 26, Verdicts (Dec. 12, 2005).

3.  At the conclusion of Plaintiff's civil action, Federal Magistrate Erickson determined that Dasen had deliberately dissipated his assets in order to render himself judgment-proof. Exh. 27 at 3-5. The same finding was made by Judge Stadler at a bail hearing at the conclusion of Dasen's criminal trial:

> With regards to responsibility, everybody [Dasen's witnesses] said he's such a responsib[le] person. This Court does not find divesting himself of all of his assets so that <u>he won't be responsible civilly for damages caused</u> or for taxes owed and transferring assets to family members' name is a great showing of responsibility. To me it's an avoidance of responsibility for acts that Mr. Dasen has been convicted of.

Exh. 20, Transcr. Bail Hearing 50:3-11, *State v. Dasen* (June 15, 2005) (emphasis added).

4.  Prior to February 2004, Richard Dasen was a wealthy businessman in Kalispell involved in numerous business ventures and owning substantial interests in Montana residences and real property. *See* Exh. 27 at 3-5.

5.  Dasen then claimed to be worth approximately $5 million. *Id.*; Exh. 6, Richard A. and Susan D. Dasen Personal Financial Statement (June 30, 2003).

6.  By the time Plaintiff obtained her judgment, however, Dasen claimed to be insolvent and incapable of even partially satisfying Plaintiff's judgment. Exh. 28, Dasen Tr. Transcr. 64:17-65:13 (May 17-18, 2005). Within five weeks of his arrest, Richard Dasen had begun making substantial transfers of assets to various friends, family members and business associates, for little or no consideration. *See* Exh. 27 at 4; *see also,* Exh. 34, Table of Transfers exhibit used to obtain an Injunction in Federal Court preventing further transfers.

4

7. At the time of his arrest, Richard Dasen owned 85% of Dasen Company. Exh. 17, Depo. Richard Dasen 49:3-24 (Apr. 12, 2005).[1] Dasen Company owned a multi-million dollar consumer loan company called Budget Finance in Kalispell and an interest in four title companies in northwest Montana. Exh. 33, Depo. Dennis Green 10:13-20 (Aug. 25, 2006).

8. Within a month of his arrest, Dasen transferred his entire interest in Dasen Company to his wife Susan Dasen, <u>for no consideration and without her knowledge</u>. Exh. 9, Stock Transfers and Stock Certificate (Mar. 19, 2004); Exh. 17 at 58:14-59:3, 59:18-19; Exh. 20 at 14:8-15; Exh. 27 at 5; Exh. 32, Susan Dasen's Resps. to Pl.'s 2nd Disc. Reqs. 4-5 (Resp. to RFA No. 1) (July 31, 2006).

9. In September 2004 (just six months after transferring the shares to her without her knowledge), Richard Dasen signed as his wife's "attorney-in-fact," binding her to transfer her interest in Dasen Company "to the company to be held as treasury stock . . ." Exh. 16, Offer (Sept. 1, 2004). In fact, Susan Dasen never granted her husband any such power of attorney. Exh. 32 at 1-2.

10. On December 8, 2005, in the middle of the civil trial held in U.S. District Court, Susan Dasen returned all of her shares to Dasen Company itself, allegedly in exchange for $7,500, a pickup truck and health insurance coverage. Exh. 25, Acknowledgment of Redemption of Stock Certificate (Dec. 8, 2005); Exh. 33 at 103:3-108:7.

At this time, <u>and paying nothing for his increased interest</u>, Defendant Dennis Green claims to be Dasen Company's sole shareholder president and managing officer. Exh. 33 at 108:6-8.

11. On April 22, 2004, Green paid himself a $60,000 "retention bonus"[2] and paid an identical bonus to Dean Jellison, Dasen Company's vice president. Exh. 33 at 133:1-141:16; *see also,* Exh. 8, Dasen Company Minutes (Mar. 16, 2004). It is unknown what, if anything, Jellison does for the company on a daily basis.

12. On March 31, 2004, with proceeds from the sale of Dasen

---

[1] Apparently, the other 15% was owned by his wife, Defendant Susan Dasen (approx. 13%) and Defendant Dennis Green (approx. 2%). *Id*. at 49:3-24.

[2] Dennis Green did not pay his $60,000 to himself personally. Instead, in a possible attempt to avoid tax liability, a check was written to "Green Enterprises," a separate entity wholly owned by Dennis Green. Exh. 13, Check to Green Enterprises (Apr. 22, 2004); Exh. 33 at 137:15-138:3.

5

Company's interest in the title companies, Dasen Company paid $3,000,000 to purchase "non-performing" notes from Budget Finance. Exh. 12, Assignment of Notes, and Combination Notes, Disclosures & Security Agreements (Mar. 31, 2004). The vast majority of the notes purchased were executed by Dasen insiders, including:

- a. $1,837,907.23 owed on loans to one of Dasen's partnerships, Northwest Investments Partnership LLP (now known as Peak Developments, LLP, a Defendant herein), for use in its development ventures. Exh. 12, Assignment of Notes, and Combination Notes, Disclosures & Security Agreements (Mar. 31, 2004); Exh. 3, Promissory Notes (June 9, 1998, Dec. 20, 2000 and June 27, 2001); Exh. 2, Partnership Agreement (May 31, 1996); *see also,* Exh. 33 at 19:21-20:17, 22:14-25:1, 26:19-28:25; Exh. 23, Minutes of Dasen Company Board of Directors Meeting (Oct. 11, 2005).

- b. Approximately $300,000 owed on a loan taken out by yet another Dasen partnership, 3D LLC. Exh. 12; Exh. 5, Combination Note, Disclosure & Security Agreement (Dec. 23, 2002); Exh. 1, Partnership Agreement (Jan. 1, 1993); *see also,* Exh. 33 at 52:9-53:25, 54:1-20, 57:6-10; Exh. 23.

- c. Over $200,000 owed on loans to Richard Dasen's son, Richard Dasen, Jr. Exh. 12; Exh. 4, Combination Note, Disclosure & Security Agreements (July 10, 2002; June 24, 2003; and July 22, 2003); *see also*, Exh. 23.

13. Dasen Company President Dennis Green has refused to make any effort to collect on these notes. Exh. 33 at 42:20-46:9, 50:2-22; Exh. 23. At his recent deposition, Dennis Green could not explain why. Exh. 33 at 44:20-46:4, 204:11-207:7. In contrast, Budget Finance uses attorney James Bartlett to routinely sue small consumer loan customers who default. *Id.* at 60:6-61:17.

Green's affidavit (Docket No. 66), at pages 4 and 8 alleges that the value of the stock at the time of the transfer would have been worthless because of bad debt, according to his accountants.

### *DISCUSSION*

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating

6

FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986) (Brennan dissent.) (Citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec.*

8

*Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Though summary judgment is rarely granted where intent is at issue, *Provens v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996), *cert. denied*, 522 U.S. 808 (1997), "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue." *Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1380 (E.D. Cal. 1995) (citing *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990)).

**UFTA**

Plaintiffs' fraudulent transfer claim is based upon MCA § 31-2-333 which provides:

31-2-333. Transfers fraudulent as to present and future creditors.

   (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

>    (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

9

>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether:

(a) the transfer or obligation was to an insider;

(b) the debtor retained possession or control of the property transferred after the transfer;

(c) the transfer or obligation was disclosed or concealed;

(d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) the transfer was of substantially all the debtor's assets;

(f) the debtor absconded;

(g) the debtor removed or concealed assets;

(h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred; or

(k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Torgenrud v. Smith*, 17 Mont. B.R. 277, 283-84 (Bankr. D. Mont. 1999).

Montana law permits actual fraudulent intent to be established by circumstantial evidence, such as by various badges of fraud codified in § 31-2-333(2). *Smith*, 17 Mont. B.R. at 384; *In re Valley Park, Inc.*, 16 Mont. B.R. 373, 380 (Bankr. Mont. 1998); *In re Teigen*, 13

Mont. B.R. 143, 146-47 (9th Cir. 1994) (*citing O'Connor v. Lewis*, 776 P.2d 1228, 1232-33 (Mont. 1989)). The badges of fraud, if found, do not necessarily constitute fraud *per se*, but merely afford grounds from which the Court is authorized to conclude that a transaction surrounded by them is fraudulent. *O'Connor v. Lewis*, 776 P.2d at 1233; *Montana Nat'l Bank v. Michels*, 631 P.2d 1260, 1263 (Mont. 1981).

T.E.F. also bases its claim for relief on MCA § 31-2-334, "Transfers fraudulent as to present creditors," which provides:

> (1) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

The parties argue whether there are disputed facts. The Trustee states in his reply brief, at page 4: "It is not clear whether Debtor was insolvent", but argues that giving away his assets "did not help improve his net worth." The Trustee also takes issue with the balance sheet for Dasen Co. attached to Green's affidavit, arguing that it is misleading in its values listed for Budget Finance and the property transferred. Budget Finance argues that genuine issues of material fact exist with respect to whether the stock transferred had any value, as supported by Green's affidavit. T.E.F. argues that Green's affidavit is contradicted by his other testimony.

It thus appears, even according to the Trustee, that genuine issues exist as to whether the corporate stock had any value, which is a factor listed at both § 31-2-333(1)(a), § 31-2-333(2)(h),

11

and § 31-2-334(1), and at least according to the Trustee regarding the Debtor's solvency[3]. Whether the stock had any value is certainly "material" in that it is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit". *Abbey v. Retz (In re Retz)*, 364 B.R. 742, 752, 759 (Bankr. D. Mont. 2007) (denying summary judgment where material issues of fact exist); *T.W. Elec. Serv.*, 809 F.2d at 630.

The Trustee takes issue with the balance sheet for Dasen Co. attached to Green's affidavit, arguing that it is misleading in its values listed for Budget Finance and the property transferred. Green's deposition, Ex. 33, includes a vigorous dispute between Green and T.E.F.'s attorney regarding his credibility, Ex. 33, pp. 205-06, and T.E.F. argues that Green's affidavit regarding value is contradicted by his other sworn testimony and is not credible. Green testified at his deposition that he was advised by accountants and attorneys regarding the collectibility of debts on his balance sheet. Ex. 35, pp. 204-05. Green argued: "I was told by my CPA that under generally accepted accounting principles, that I should charge that off, yes." Ex. 35, p. 45:18-20. Under the principles governing summary judgment, although many of the badges of fraud listed at § 31-2-333(2) appear present, because of the genuine dispute regarding value of the transferred corporate stock the Court must conclude that T.E.F. failed its "heavy burden" to show that no disputed facts exist warranting disposition of the case without trial. *Retz*, 364 B.R. at 751, quoting *Younie*, 211 B.R. at 373 (other citations omitted). Genuine issues of material fact exist about valuation of the stock, and issues of credibility and weight to be given to witness testimony exist, which are simply not appropriate for summary judgment.

---

[3]The Trustee states in his reply brief, at page 4: "It is not clear whether Debtor was insolvent", but argues that giving away his assets "did not help improve his net worth."

The Court concludes, after review of the partial motion, response and parties' briefs, that material issues of fact exists. The instant case is not the "rare case" in which summary judgment is granted where intent is at issue. *Provens v. Miller*, 102 F.3d at 1489.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above, denying the motion for partial summary judgment filed in this adversary proceeding by T.E.F. on June 18, 2007, and joined in by the Plaintiff/Trustee Richard J. Samson (Docket No. 48).

                                         BY THE COURT

                                         */s/ Ralph B. Kirscher*
                                         HON. RALPH B. KIRSCHER
                                         U.S. Bankruptcy Judge
                                         United States Bankruptcy Court
                                         District of Montana